IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

MICHELLE BANKS                                        PLAINTIFF

v.                                        5:20-cv-00176-DCB-MTP

CLAIBORNE COUNTY SCHOOL DISTRICT                          DEFENDANT

ORDER

THIS MATTER is before the Court on Claiborne County School District's ("Defendant") Motion for Summary Judgment. [ECF No. 26]. The Court having examined the Motion, the parties' submissions, the record, the applicable legal authority, and being informed in the premises, finds as follows:

I.   Procedural & Factual Background

On July 2, 2020, Michelle Banks ("Plaintiff") filed suit in the Circuit Court of Claiborne County, Mississippi. [ECF No. 1-1]. In her Complaint, Plaintiff asserts three causes of action arising under state and federal law. Id. First, Plaintiff states that Defendant violated Mississippi law by terminating her for serving jury duty. Id. at 6. Second, Plaintiff submits that Defendant has violated the Fair Labor Standards Act ("FLSA") by failing to pay her overtime wages that she was owed. Id. at 7. Lastly, Plaintiff alleges Defendant interfered with her rights under the Family & Medical Leave Act ("FMLA") and retaliated

against her for utilizing this leave. Id. at 7. Defendant filed its Notice of Removal on September 4, 2020. [ECF No. 1].

This action arises from Plaintiff's employment at Port Gibson High School ("the School") as an administrative assistant. [ECF No. 27] at 2; [ECF No. 30] at 1. In late-August 2019, she began a period of FMLA leave. [ECF No. 1-1] at 3; [ECF No. 4] at 7. Although Defendant initially informed Plaintiff that her return-to-work date was January 21, 2020, [ECF No. 26-2]; [ECF No. 29-1] at 3, this date was an error, and Defendant subsequently informed her that her actual return date was December 4, 2019 [ECF No. 26-3]. Shortly before her return to work, Plaintiff requested, and was approved for, an extension of her leave until January 30, 2020. [ECF No. 26-4] at 2; [ECF No. 29-1] at 3. In approving her extension, Defendant informed Plaintiff that her FMLA leave was now exhausted, that it would no longer pay the employer portion of her health insurance, and that she no longer had the job protection that accompanies FMLA leave.[1] [ECF No. 26-4].

The day prior to returning to work, Plaintiff learned that she had been summoned for jury duty. [ECF No. 29-1] at 4. The following morning, Plaintiff called the School and spoke to Rhonda

---

1. Despite the fact that Plaintiff's FMLA leave was exhausted on December 4, 2019, [ECF No. 26-4], Defendant's memorandum in support of its Motion for Summary Judgment characterizes the period afterwards as FMLA leave. [ECF No. 27] at 11.  Plaintiff too seems to believe that she was still on FMLA leave up until January 30, 2020. [ECF No. 30] at 11.

Cook, a payroll clerk, and informed her of her jury summons. [ECF No. 29-4] at 11-12. Ms. Cook directed Plaintiff to inform the superintendent, Dr. Annie Kilcrease, of her absence. Id. Plaintiff did so and requested a meeting with Dr. Kilcrease after she was released from jury service. [ECF No. 29-1] at 5; [ECF No. 29-5] at 8. Because Dr. Kilcrease was not in the office at the time, Mary McCay, an administrative assistant in the superintendent's office, informed Plaintiff that she would pass along Plaintiff's message. [ECF No. 29-1] at 5; [ECF No. 29-5] at 8. Plaintiff was dismissed from jury duty later that day. [ECF No. 29-1] at 5.

At this point, the narrative is in dispute. Plaintiff alleges that, when she returned to the School the afternoon that she was released from jury duty, Principal Fuller informed her that she had been replaced and no longer needed to report to work. [ECF No. 29-1] at 5. In response, Defendant asserts that Plaintiff's employment could not have been terminated by Principal Fuller because he lacked the authority to terminate her. [ECF No. 29-3] at 8. Defendant further submits that Plaintiff was not terminated until March 20, 2020 for job abandonment [ECF No. 26-7] and that she was not replaced until April 8, 2020 [ECF No. 26-8] at 3.

In the weeks following Plaintiff's dismissal from jury duty, she alleges that she repeatedly attempted to contact Superintendent Kilcrease by phone, to no avail. [ECF No. 26-5] at 39. Defendant, on the other hand, submits that Plaintiff failed to

communicate with the School regarding the time and date she would return to work. [ECF No. 29-3] at 10–11. Superintendent Kilcrease further claims to have sent Plaintiff a letter in February informing her that a failure to return would result in her termination. Id. at 11. Plaintiff disputes that she ever received any communication regarding her employment until April when she learned of her termination. [ECF No. 29-1] at 6.

In the time since Plaintiff's termination, she alleges that she is owed unpaid overtime wages dating back to 2018. [ECF No. 1-1] at 7. Plaintiff claims that, despite Defendant's policy against working overtime without prior authorization, she was regularly required to do so, and Defendant was aware of this overtime work. [ECF No. 29-1] at 1–2. Plaintiff further alleges that when she attempted to submit her timesheet reflecting these overtime hours, Ms. Cook instructed her to remove these hours. [ECF No.26-5] at 55–56; [ECF No. 29-1] at 3. Defendant submits that it did not require Plaintiff to work overtime, that it was not aware she did so, and that Ms. Cook never instructed her to alter her timesheet in any manner. [ECF No. 29-4] at 8–9.

## II.  Summary Judgment Standard

Summary judgment is appropriate, pursuant to Rule 56 of the Federal Rules of Civil Procedure, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An

issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A party cannot defeat a properly-supported summary judgment motion by directing the Court to conclusory allegations or presenting only a scintilla of evidence. Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018).

The evidence must be reviewed in a light most favorable to the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d 307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). The Court neither assesses credibility nor weighs evidence at the summary-judgment stage. Wells v. Minnesota Life Ins. Co., 885 F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### III. Discussion & Analysis

A. **Plaintiff's FMLA Claim**

Defendant argues that it is entitled to summary judgment because Plaintiff cannot produce any evidence suggesting that her usage of FMLA leave is the reason for her termination. [ECF No. 27] at 11. In response, Plaintiff contends that, because her

5

termination occurred on the same day that her FMLA leave expired, the causal link is manifest.[2] [ECF No. 30] at 11. The Court concludes that, although Plaintiff is mistaken as to when the adverse employment action occurred, there is sufficient temporal proximity between the protected activity and her termination to survive summary judgment.

The FMLA grants an eligible employee up to twelve weeks of annual unpaid leave for serious health conditions that prevent her from performing her job. See 29 U.S.C. § 2612(a)(1)(D). An employer may not interfere with the exercise of this right, nor may it retaliate against an employee for opposing any practice made unlawful by the FMLA. Id. at § 2615.

Absent direct evidence of discriminatory intent by an employer, courts apply the familiar McDonnell-Douglas method of analysis. See Tatum v. Southern Co. Servs., 930 F.3d 709, 713 (5th Cir. 2019). Under this framework, once an employee establishes a prima facie case of interference or retaliation, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer is able to

---

2. Although not argued in her Response, Plaintiff's Complaint makes a claim for FMLA interference as well as FMLA retaliation. [ECF No. 1-1] at 7. Accordingly, her claim for FMLA interference is deemed to have been abandoned due to her failure to brief the issue. See Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002)(noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived.").

do so, the burden then shifts back to the employee to show by a preponderance of the evidence that the employer's reason is a pretext for discrimination. Id.

As discussed above, the FMLA prohibits retaliation against those who exercise their FMLA rights. 29 U.S.C. §2615. To make a prima facie showing of FMLA retaliation, an employee must show (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. Campos v. Steves & Sons, Inc., 10 F.4th 515, 527 (5th Cir. 2021).

With regard to the first prong, an employee does not lose the protection of the anti-retaliation provisions in the FMLA because she has used all of the leave under the statute. See Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 768-69 (5th Cir. 2001) ("The FMLA's protection against retaliation is not limited to periods in which an employee is on FMLA leave, but encompasses the employer's conduct both during and after the employee's FMLA leave."). Thus, the prohibition on retaliation under the FMLA extends beyond the twelve-weeks of leave granted to employees under the statute.

Turning to the second prong, an adverse employment decision only covers "'ultimate employment decisions,' such as hiring, granting leave, discharging, promoting, and compensating . . . ."

7

Id. at 769. Further, in determining whether an adverse employment action occurred, a court will look to the final decisionmaker because the acts of ordinary employees or supervisors are generally not imputed to their employer. See Flood v. Shell Servs. Int'l, Inc., 287 F. Supp. 2d 732, 740 (S.D. Tex. Oct. 20, 2003). The exception to this rule is the "cat's paw" argument, but this exception is not at issue here. See generally, Staub v. Proctor Hosp., 562 U.S. 411 (2011).

In Mississippi, state statute governs how noninstructional and nonlicensed[3] employees of public schools may be disciplined, as well as who may do so. See Miss. Code. Ann. §37-9-14(2)(y). This statute expressly grants a superintendent the authority "to employ and dismiss noninstructional and nonlicensed employees as provided by law." Id. Indeed, the Mississippi Attorney General's office has opined that "the [Mississippi] legislature specifically granted to the superintendent the authority to dismiss nonlicensed employees." 2004 WL 3015443 (Miss. A.G.). Thus, in Mississippi, the superintendent of a school district is the ultimate decisionmaker with respect to a nonlicensed employee's hiring and

---

3. "The term 'licensed employee' shall mean any other employee of a public school district required to hold a valid license by the Commission on Teacher and Administrator Education, Certification and Licensure and Development. The term 'non-instructional employee' shall include all employees of school districts other than superintendents, principals and licensed employees." Miss. Code Ann. § 37-9-1.

firing. Nowhere in the statute does it state, suggest, or imply that a school principal possesses the authority to unilaterally terminate a nonlicensed employee.

With respect to the final prong, in determining whether a causal link exists, courts look to a variety of factors, including (1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination. Bacon v. EDA, 219 F. App'x 355, 357 (5th Cir. 2007) citing Nowlin v. Resolution Trust Corp., 33 F.3d 498, 508 (5th Cir. 1994). If there is no other evidence of causation between the protected activity and the termination, "cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

While the Supreme Court does not define what constitutes "very close," courts in the Fifth Circuit have found that a four-month gap between protected activity and an adverse employment action was sufficient to establish a causal link. See Stroud v. BMC Software, Inc., No. 07-20779, 2008 U.S. App. LEXIS 12244, at *16 (5th Cir. June 6, 2008) (unpublished case) (explaining that this circuit had found temporal proximity of up to four months to be sufficient to show a causal link); but see Raggs v. Miss. Power &

Light Co., 278 F.3d 463, 471-72 (5th Cir. 2002) (noting a five-month lapse, by itself, does not support an inference on a causal link).

If an employee is able to present a prima facie face of retaliation, an employer may nevertheless prevail at the summary judgment stage by presenting a legitimate, nondiscriminatory reason for the adverse employment action. To do so, the employer must "provide both clear and reasonably specific reasons for its action." Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001) citing Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981). Relevant here, job abandonment is a legitimate, nondiscriminatory basis for terminating an employee who engaged in protected activity. See Scott v. DMN, Inc., No. 3:99-cv-2776-L, 2001 U.S. Dist. LEXIS 4929*, *6 (N.D. Tex. Apr. 19, 2001).

Turning to the latter two elements of Plaintiff's prima facie case, the Court must first determine whether an adverse employment action occurred and when. In doing so, the Court looks to the gap between the protected activity and the adverse employment action in determining the temporal proximity between the two.

In her Response, Plaintiff asserts that "she suffered an adverse employment action by being terminated, and there is a causal link as she was informed by her principal that she was terminated on the same day her FMLA leave ended." [ECF No. 30] at

11. Plaintiff is therefore alleging that she was terminated on January 30. [ECF No. 26-5] at 38.

As discussed, an adverse employment action only occurs when there is an "ultimate employment decision." Hunt, 277 F.3d at 769. An ultimate employment decision may only be made by a final decisionmaker, and the actions or comments of those without authority to effectuate an ultimate employment decision are not generally imputed to an employer. Flood, 287 F. Supp. 2d at 740. Because Mississippi law explicitly grants a school superintendent the authority to terminate a non-licensed employee like Plaintiff, see Miss. Code Ann §37-9-14(2)(y), the Court can only conclude that no ultimate employment decision occurred on January 30 in as much as Principal Fuller lacks the authority to terminate nonlicensed employees. Indeed, the fact that Plaintiff's letter informing her that she was terminated as of March 20 supports this conclusion. [ECF No. 26-7] at 1. Accordingly, while Plaintiff did suffer an adverse employment action, it did not occur until March 20.

When the law is applied to the undisputed facts available to the Court, and all reasonable inferences are drawn in favor of Plaintiff, it is the Court's determination that Plaintiff has successfully made a prima facie showing of FMLA retaliation. Plaintiff's FMLA leave expired on December 4, 2019, [ECF No. 26-4] at 1, and she was officially terminated on March 20, 2020. [ECF

11

No. 27-7]. This results in a three-and-a-half-month gap between her protected activity and adverse employment action. As discussed, the Fifth Circuit has found such a gap sufficient to find a causal link between protected activity and adverse employment action. Stroud, 2008 U.S. App. LEXIS 12244, at *16.

While Defendant may be justified in arguing Plaintiff effectively abandoned her job between January 30 and March 20 by failing to return to work, the factual circumstances of this intervening period are opaque. Although Defendant submits that it sent a letter in February to Plaintiff stating that she needed to communicate with the school concerning her return to work, [ECF No. 26-7], thus implying she could have returned to work and chose not to, Plaintiff disputes that she received such a letter. [ECF No. 29-1] at 6. Further, Defendant concedes that it cannot show Plaintiff ever received this letter. [ECF No. 37] at 3. At this stage, Defendant is therefore unable to present a legitimate, nondiscriminatory reason for Plaintiff's termination.

Plaintiff argues that she reached out to Superintendent Kilcrease's office numerous times on January 30, and 31 to inquire about the status of her job, but never received a response. [ECF No. 29-1] at 6. Superintendent Kilcrease, however, stated that she tried to call Plaintiff on several occasions. [ECF No. 29-3] at 15-15. While Plaintiff concedes that she took no further action to retain her job other than to place several phone calls to the

12

superintendent's office, [ECF No. 26-5] at 38-45, the issue as to whether Plaintiff abandoned her position with the school is a factual dispute.

B. **Plaintiff's Wrongful Termination Claim**

Plaintiff argues that Defendant terminated her in retaliation for missing work after she attended jury service. [ECF No. 30] at 10. To support this argument, Plaintiff asserts that a reasonable jury could conclude that Dr. Kilcrease avoided contact with her because she was upset that Plaintiff attended jury service instead of returning to work on January 30, 2020. [ECF No. 30] at 11. In response, Defendant counters that Plaintiff has produced nothing more than speculation and conjecture in attempting to link her jury services with her termination. [ECF No. 27] at 8.

Mississippi law prohibits employers from "remov[ing] or otherwise subject[ing] an employee to adverse employment action as a result of jury service if the employee notifies his or her employer that he or she has been summoned to serve as a juror within a reasonable period of time after receipt of a summons." Miss. Code Ann. § 13-5-35(1). This prohibition on retaliating against employees who are required to miss work for the purpose of jury duty is part of a broader statute designed to discourage employers from pressuring employees to avoid jury service. See Miss. Code Ann. § 13-5-35(1)-(2). Any violation of this statute "shall be deemed an interference with the administration

13

of justice and a contempt of court and punishable as such." Miss. Code Ann. § 13-5-35(3).

While there is a dearth of Mississippi court cases interpreting this statute, the Fifth Circuit Court of Appeals recently elucidated what a plaintiff must demonstrate to survive summary judgment when bringing a claim against his employer for a violation of the law. In Simmons v. Pac. Bells, L.L.C., the Fifth Circuit held that a plaintiff must establish some causal link between the alleged misconduct and the decision process resulting in the discharge. 787 F. App'x 837, 842 (5th Cir. 2019). In finding that an employee demonstrated this link, the appellate court highlighted multiple facts suggesting the employer's stated reason for terminating the employee was pretextual. Id. In particular, the appellate court made note of the fact that the plaintiff had never been warned that his tardiness would result in termination, that other employees were tardy more often than the plaintiff and did not receive disciplinary action, and an email from the supervisor who terminated him suggesting that she had "several different routes [she could] go with [the plaintiff's] termination . . . . [She] wants to focus on his excessive tardiness." Id. at 843. Taken in sum, the Fifth Circuit concluded that the plaintiff had provided the district court with sufficient circumstantial evidence to withstand summary judgment.

Despite the dissimilarity between the facts of <u>Simmons</u> and those here,[4] Plaintiff has presented sufficient evidence to withstand summary judgment. For essentially the same reasons that Plaintiff's FMLA retaliation claim survives, so too does her wrongful termination claim. Plaintiff alleges that Principal Fuller told her she had been replaced and that she no longer needed to come to work. Plaintiff then tried to speak with Superintendent Kilcrease but asserts that she never received a call back from her. What occurred between January 30 and March 20 is largely disputed by both parties, and the Court believes a jury should resolve these factual disputes.

While Plaintiff's FMLA and wrongful termination claims survive, it was, admittedly, a close call. Plaintiff has offered no evidence that anyone employed by Defendant possessed any retaliatory animus against her for taking FMLA leave, or for her jury service. [ECF No. 26-5] at 66. These claims survived because of the temporal proximity between Plaintiff's protected activity and her adverse employment action. Beyond evidence and testimony

_____

4. First, Mr. Simmons alleged that, when he informed his employer that he would need time off to attend jury duty, his supervisor instructed him to "find a way to get out of jury duty." <u>Simmons</u>, 787 F. App'x at 839. Here, Plaintiff acknowledges that no one at the School had any problem with her being out for jury duty. [ECF No. 26-5] at 66. Second, while the supervisor in <u>Simmons</u> noted via email that Mr. Simmons' tardiness was one of "several routes" she could take to terminate him after his jury service, here, there is no evidence, beyond temporal proximity, that suggests her firing was in any way related to her one-day of jury service.

that is disputed by Plaintiff, Defendant is unable to demonstrate that Plaintiff was under an obligation to return to work after January 30. While Plaintiff's termination was not official until March 20 because Principal Fuller lacked the authority to terminate her, the Court must infer that Plaintiff must have believed she was not to return to work in light of the allegation that Principal Fuller told her she did not need to do so. Because it is disputed as to whether anyone from the School ever tried to return her calls, or whether she ever received the letter warning her that her termination was imminent if she did not return to work, the Court believes that this is a factual determination for the jury.

C. **Plaintiff's FLSA Claim**

Defendant contends that it is entitled to summary judgment because Plaintiff concealed the overtime hours she allegedly worked and is unable to produce any evidence supporting her claim unpaid overtime is owed. [ECF No. 27] at 9. In response, Plaintiff submits that she is owed backpay for unpaid overtime hours because Defendant knew of this additional time spent working and threatened her with termination if she reported this overtime on her timesheets. [ECF No. 30] at 8. Plaintiff argues that, because she alleges she was threatened with termination if she did not alter her timecard, this creates a genuine issue of material fact as to

whether Defendant knew of her overtime work.[5] Given the numerous contradictions between Plaintiff's deposition testimony and her later affidavit addressing her FLSA claim, Plaintiff's proof is somewhat unavailing, but she will be given an opportunity to make her case at trial.

The FLSA requires employers to pay covered employees overtime compensation that is not less than one and one-half times the employee's regular rate for all hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1). When a plaintiff is seeking damages for unpaid overtime wages, a plaintiff must prove: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." Parrish v. Premier Directional Drilling, L.P., 917 F.3d 369, 379 (5th Cir. 2019). Each element must be proven by a preponderance of the evidence. Id. Once the

---

5. Plaintiff also argues that summary judgment is not appropriate because Defendant did not keep proper time records as required by the FLSA. While the FLSA does impose record keeping requirements on employers, see 29 U.S.C. § 211(c), the FLSA's recordkeeping requirement does not create a private right of action. Edwards v. 4JLJ, LLC, Civil Action No. 2:15-cv-299, 2017 U.S. Dist. LEXIS 684, *5 (S.D. Tex. Jan. 4, 2017). Indeed, the cases cited by Plaintiff involved the Secretary of Labor seeking injunctive relief prohibiting the defendant from violating the minimum wage, overtime compensation, and record keeping provisions of the FLSA. See, e.g., Wirtz v. Williams, 369 F.2d 783, 785 (5th Cir. 1966).

employee establishes a prima facie case, the burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Johnson v. Heckmann Water Res. (CVR), 758 F.3d 627, 630 (5th Cir. 2014). In this matter, there is no dispute as to the first element and it will therefore not be discussed.

With respect to the third and fourth elements, while an employer is not required to compensate an employee for time spent working that the employee deliberately conceals from the employer, see Newton v. City of Henderson, 47 F.3d 746, 748 (5th Cir. 1996), an employer "cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 964 (5th Cir. 2016).

To establish that an employer knew or should have known the employee was working unrecorded overtime, it is not enough for an employee to show her workload was such that she was required to work overtime in order to complete her assigned tasks. Newton, 47 F.3d at 749. An employee's subjective belief that her employer wants her to work overtime in order to finish her work in a timely manner is similarly insufficient to impute constructive knowledge of her overtime work to her employer. Fairchild, 815 F.3d 965.

Where an employer has a policy against employees working overtime without authorization, courts have consistently held that plaintiffs who conceal this work from their employer cannot later recover under the FLSA. See Brumbelow v. Quality Mills, Inc., 462 F.3d 1324, 1327 (5th Cir. 1972) (an employee may not profit from her own wrong in furnishing false data to her employer); see also Fairchild, 815 F.3d at 965 (to permit a plaintiff who has deliberately falsified her timecard to recover for unpaid overtime would improperly deny an employer's right to require an employee to adhere to its procedures for claiming overtime). Where there is evidence to support a conclusion that an employer forces or encourages an employee to submit incorrect timesheets, however, this will not serve as a bar to recovery since this coercive activity necessarily implies an awareness of the employee's overtime. Newton, 47 F.3d at 750.

Although Plaintiff's deposition and affidavit contain several inconsistencies[6] that may make it difficult for her to prevail at trial, Plaintiff has presented sufficient evidence to withstand summary judgment. Plaintiff has alleged that Principal Fuller knew she was working overtime, though she does not say how Principal Fuller knew. [ECF No. 26-5] at 65. Further, Plaintiff alleges that

---

6. See e.g., [ECF No. 29-1] at 2 and [ECF No. 26-5] at 64 wherein Plaintiff contradicts herself on the topic of whether she ever asked Principal Fuller about receiving overtime pay after working overtime hours.

Ms. Cook directed her to alter her timesheets to take off any
overtime work or else she would be terminated, [ECF No. 29-1] at
3, though this allegation is partially contradicted in her
deposition where she characterizes Ms. Cook's statement as more of
an insinuation that Superintendent Kilcrease would be "upset"
about unauthorized overtime hours. [ECF No. 26-5] at 65. While a
party may not defeat a motion for summary judgment using an
affidavit that impeaches sworn testimony without explanation, see
S.W.S. Erectors v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996),
the Court does not believe these contradictions to be so damning
as to justify granting summary judgment on her FLSA claim.

Assuming that Plaintiff has satisfied the second and third
prongs of a prima facie case, the Court turns to the final prong,
the amount of overtime compensation due. "An employee bringing an
action pursuant to the FLSA, based on unpaid overtime compensation,
must first demonstrate that she has performed the work for which
she alleges she was not compensated." Ihegword v. Harris County
Hosp. Dist., 555 F. App'x 372, 374 (5th Cir. 2014) citing Harvill
v. Westward Commc'ns, LLC, 433 F.3d 428, 441 (5th Cir. 2005).

An employee carries this burden if she proves that she has
performed work for which was improperly compensated and if she
presents sufficient evidence to demonstrate the amount of that
work as a matter of "just and reasonable inference." Ihegword, 555
F. App'x at 374. If she does so, the burden then shifts to the

employer to "come forward with evidence of the precise amount of the work performed, or of evidence that negates the reasonableness of the inference that is to be drawn from the employee's evidence." Id. Where a defendant fails to do so, a court may award damages to the employee even where the damages may only be approximate. Id.

With respect to the second and third prongs of her prima facie case, the Court believes the facts are such that Plaintiff's FLSA claim should proceed to trial. Plaintiff alleges that she consistently worked overtime hours, that her employer knew of this work, and, when she attempted to log these hours, she was threatened with termination. Defendant disputes that it was aware of any overtime worked by Plaintiff and contends that Ms. Cook never instructed her to conceal her overtime hours. Because a jury could reasonably believe either party, this is ultimately an issue of credibility that the Court cannot resolve on summary judgment.

With respect to the fourth prong of Plaintiff's prima facie case, Plaintiff estimates that she worked between forty-two to fifty-two hours per week. [ECF No. 29-1] at 1–3. While it is unclear exactly how long of a period that Plaintiff is alleging she worked these hours[7], she detailed several tasks and

---

7. In her deposition, Plaintiff states that she was regularly working overtime from 2018 until she began FMLA leave in August 2019. [ECF No. 26-5] at 49–50. Plaintiff's FLSA claim, however, centers on Principal Fuller, who did not become Principal at the School until June or July 2019, [ECF No. 29-1] at 1, being aware that she was working unrecorded overtime hours.

responsibilities that caused her to work overtime. [ECF No. 26-5] at 47-49. In reply to Plaintiff's allegations, Defendant produced her check registers which show the number of hours worked and the corresponding pay. See [ECF No. 33-1]. Given the nature of Plaintiff's FLSA claims, however, her allegations necessarily imply that these registers are not an accurate depiction of the hours she actually worked. While Defendant has produced evidence that shows the amount of work performed, if a reasonable jury were to conclude that Defendant knew of Plaintiff's overtime work and then threatened her with termination if she recorded it, then it could also conclude that Plaintiff's approximation of overtime worked is a more accurate representation of the wages she is owed than the check registers. Accordingly, the Court finds that Plaintiff has made her prima facie case of an FLSA overtime violation and that Defendant has failed to carry its burden in rebutting it.

Due to repeated contradictions between Plaintiff's deposition and affidavit, she faces a high hurdle to establish that Defendant knew of her overtime work, or that anyone employed by Defendant ever instructed her to conceal this work. Nevertheless, it is the opinion of the Court that, much like her FMLA and wrongful termination claims, there are disputed material facts that a jury should resolve.

Despite supplemental briefing being ordered by the Court, Defendant is unable to show there were no material facts in dispute. While Defendant asserts that Plaintiff was terminated for failing to return to work, [ECF No. 26-7], Plaintiff claims that she repeatedly tried to contact Superintendent Kilcrease about coming back to her old position, but that she never received any call back. [ECF No. 29-1] at 5-6. Further, whereas Defendant claims it sent Plaintiff a hand-delivered letter in February warning her that she would soon be terminated if she did not contact the school about returning to work, [ECF No. 29-3] at 15, Plaintiff disputes ever receiving this letter, [ECF No. 29-1] at 5-6, and Defendant conceded that it cannot produce a receipt with Plaintiff's signature. [ECF No. 37] at 3. At this stage in the litigation, these are disputes for a jury to resolve.

Accordingly, Defendant's Motion for Summary Judgment [ECF No. 26] is DENIED.

SO ORDERED this 29th day of December, 2021.

/s/ David C. Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE